## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **PERRY BAKER**, *on behalf of himself and all others similarly situated,*<br><br>        Plaintiff,<br><br>v.<br><br>**WEBSTER FINANCIAL CORPORATION,** and **WEBSTER BANK, N.A.,**<br><br>        Defendants. | Case No.: 3:23-cv-00666<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Perry Baker, individually and on behalf of all others similarly situated (hereinafter "Plaintiff"), brings this Class Action Complaint against Defendants Webster Financial Corporation, ("Webster Financial") and Webster Bank, N.A. ("Webster Bank") (collectively the "Defendants"), and alleges, upon personal knowledge as to his own actions, and upon information and belief as to all other matters, as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff brings this class action against Defendants for their failure to properly secure and safeguard the personal identifiable information ("PII" or "Private Information"), including, but not limited to, the names, Social Security numbers, and financial account numbers, of customers of Webster Bank.

2.      Webster Bank, N.A. is "a leading commercial bank in the Northeast that delivers a wide range of digital and traditional financial solutions to businesses, individuals, families, and

partners across three differentiated lines of business: Commercial Banking, HSA Bank, and Consumer Banking."[1]

3.      Upon information and belief, current and former Webster Bank customers are required to entrust Defendants with sensitive, non-public Private Information, without which Webster Bank could not perform their regular business activities, in order to use Webster Bank's financial services. Defendants retain this information even after the consumer relationship has ended.

4.      By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiff and Class Members, Defendants assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access, intrusion, and disclosure.

5.      Because of the highly sensitive and personal nature of the information Defendants acquire and store with respect to their customers, Defendants' duties and obligations to Plaintiff and Class Members included, but were not limited to, keeping their Private Information private; complying with industry standards related to data security and the maintenance of their customers' Private Information; informing their customers of their legal duties relating to data security and complying with all federal and state laws protecting customers' Private Information; only using and releasing customers' Private Information for reasons that relate to the services they provide; and providing timely and adequate notice to customers if their Private Information is disclosed without authorization.

---

[1] Webster Financial Corporation, *Annual Report (Form 10-K)* 1 (Dec. 31. 2022), *available at* https://public.websteronline.com/sites/default/files/documents/2022-annual-report.pdf.

6.      Guardian Analytics is a "provider of behavioral analytics and machine learning solutions for preventing banking fraud and anti-money laundering."[2] Guardian Analytics was acquired by Actimize in 2020 and provides fraud detection services to Webster Bank as a third-party vendor.[3]

7.      On or around April 10, 2023, Webster Bank announced that Guardian Analytics experienced a data security incident that affected the personal information of a number of Webster Bank customers, with Guardian Analytics' investigation concluding that "unauthorized third parties accessed certain Guardian systems at various times between November 27, 2022 – January 22, 2023" (the "Data Breach").[4]

8.      Defendants' negligence resulted in Plaintiff's and Class Members' Private Information being accessed and extracted from Defendants' systems and thereafter posted on the internet by unauthorized third parties.[5] Webster Bank admits that the unencrypted Private Information obtained by unauthorized third parties included customers' names, Social Security numbers, and financial account numbers.[6]

---

[2] *About Guardian Analytics*, NICE Actimize, https://guardiananalytics.com/about-guardian-analytics/ (last visited May 10, 2023).

[3] *NICE Actimize to Acquire Guardian Analytics, Expanding AI Cloud Solutions for Financial Crime Risk Management Across All Market Segments*, NICE Actimize (June 4, 2020), https://www.niceactimize.com/press-releases/nice-actimize-to-acquire-guardian-analytics-expanding-ai-cloud-solutions-for-financial-crime-risk-management-across-all-market-segments-323/; Notice of Data Breach, *supra* note 1.

[4] Notice of Data Breach Letter from Webster Bank to Perry Baker (Apr. 10, 2023) (attached hereto as Exhibit 1); *see also* Sample Notice of Data Breach, Mass.gov (Apr. 10, 2023), https://www.mass.gov/doc/assigned-data-breach-number-29378-webster-bank-na/download.

[5] Notice of Data Breach, *supra* note 4.

[6] *Id.*

9.     Defendants sent notice of the Data Breach to impacted consumers on or around April 10, 2023 (the "Notice of Data Breach").[7]

10.    The exposed Private Information of Plaintiff and Class Members has been posted on the internet and can be sold on the dark web. Hackers can access and then offer Plaintiff's and Class Members unencrypted, unredacted Private Information for sale to criminals. Plaintiff and Class Members now face a lifetime risk of (i) identify theft, which is heightened here by the loss of Social Security numbers, and (ii) the sharing and detrimental use of their sensitive information.

11.    The Private Information was compromised due to Defendants' negligent and/or careless acts and omissions and their failure to protect the Private Information of Plaintiff and the Class Members. In addition to Defendants' failure to prevent the Data Breach, Defendants waited several weeks after Plaintiff's and Class Members' Private Information had been exfiltrated to report it to the states' Attorneys General and affected individuals. Defendants have also purposefully maintained as secret the specific vulnerabilities and root causes of the Data Breach, withholding this information from Plaintiff and Class Members.

12.    As a result of this delayed response, Plaintiff and Class Members had no idea their Private Information had been compromised and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm, including the sharing and detrimental use of their sensitive information.

13.    Defendants failed to adequately protect Plaintiff's and Class Members Private Information—and failed to even encrypt or redact this highly sensitive information. This unencrypted, unredacted Private Information was compromised due to Defendants' negligent and/or careless acts and omissions and their utter failure to protect customers' sensitive data.

---

[7] *Id.*

Hackers targeted and obtained Plaintiff's and Class Members' Private Information because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

14. Plaintiff and Class Members have suffered injury as a result of Defendants' conduct. These injuries include: (i) invasion of privacy; (ii) lost or diminished value of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identify theft, tax fraud, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (v) loss of the benefit of their bargain with Defendants; (vi) the disclosure of their Private Information; and (vii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendants' possession and subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

15. Defendants disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently (i) failing to take and implement adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class Members was safeguarded; (ii) failing to take available steps to prevent an unauthorized disclosure of data; and (iii) failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of date, even for internal use. As a result, the Private Information of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party.

16. Plaintiff seeks to remedy these harms, on behalf of himself and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach,

and brings causes of action for: (I) Negligence, (II) Negligence Per Se, (III) Breach of Implied Contract, (IV) Unjust Enrichment, (V) Breach of Fiduciary Duty, (VI) Invasion of Privacy, (VII) Violation of the Connecticut Unfair Trade Practices Act, and (VIII) Declaratory and Injunctive Relief under the Declaratory Judgment Act.

## THE PARTIES

17.     Plaintiff Perry Baker is a natural person, resident, and a citizen of Connecticut. He has no intention of moving to a different state in the immediate future. Plaintiff is a current customer of Webster Bank.

18.     Defendant Webster Financial is the holding company for Webster Bank. Webster Financial is publicly traded and is regulated by the Federal Reserve Board of Governors. Webster Financial was incorporated under the laws of Delaware in 1986, and maintains its principal place of business in Waterbury, Connecticut.

19.     Defendant Webster Bank is a national bank organized under the laws of Delaware with its principal place of business at 200 Elm Street, Stamford, Connecticut 06902.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative class members defined below, and minimal diversity exists because a significant portion of the putative class members are citizens of a state different from the citizenship of at least one Defendant.

21.     This Court has personal jurisdiction over Defendant Webster Financial because Webster Financial maintains its principal place of business within this District, conducts substantial business within this District, and has purposely availed itself of the laws of Connecticut.

22.     This Court has personal jurisdiction over Defendant Webster Bank because Webster Bank maintains its principal place of business within this District, conducts substantial business within this District, and has purposely availed itself of the laws of Connecticut.

23.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because Defendants conduct substantial business in this District, Defendants Webster Financial and Webster Bank maintains its principal places of business within Connecticut, and a substantial part of the events giving rise to this action occurred in this District.

## COMMON FACTUAL ALLEGATIONS

### A. Background

24.     Webster Bank, with over $70 billion in assets, "is a leading commercial bank that delivers financial solutions to businesses, individuals, families, and partners," offering both digital and traditional services through three lines of business: commercial banking, consumer banking, and HSA bank.[8]

25.     Webster Bank's security statement reads:

Identity theft and fraud can turn your life upside down. We take the privacy and security of your information seriously and our number one goal is to give you peace of mind when it comes to your protection.
. . .
Webster Bank uses enhanced security controls to keep your safety at the top of our list. Learn more about all we do to keep you safe.

26.     Plaintiff and class members are past and current customers of Webster Bank and provided and entrusted Webster Bank with their most sensitive and confidential information, including their name, Social Security number, and bank account numbers.

---

[8] *About*, WEBSTER BANK, https://public.websteronline.com/about (last visited May 10, 2023).

27.     Guardian Analytics is a third-party vendor that provides fraud detection services to Webster Bank. In exchange for and/or in the course of obtaining these services, Webster Bank provides its customers' PII to Guardian Analytics.

28.     Defendants acquired, stored, maintained, and used Plaintiff's and Class Members' Private Information in the ordinary course of their respective business practices. In doing so, Defendants agreed to and undertook legal duties to maintain the safety and confidentiality of Plaintiff's and Class Members' Private Information in compliance with all applicable laws.

29.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protection Plaintiff's and Class Members' Private Information from unauthorized disclosure.

30.     Guardian Analytics' website contains a privacy policy regarding the data it collects through its website and the provision of services to its clients, which states:

**Security**
The privacy and protection of your personal information is important to us. We follow generally accepted industry standards to protect the personal information submitted to us, both during transmission and once we receive it. No method of transmission over the Internet, or method of electronic storage, is 100% secure, however. Therefore, we cannot guarantee its absolute security . . . .
. . .

**Methods We Use to Protect Your Information**
We use security software to protect the confidentiality of your personal information. In addition, our business practices are reviewed periodically for compliance with policies and procedures governing the security and confidentiality of our information. Our business practices limit employee access to confidential information, and limit the use and disclosure of such information to authorized persons.[9]

---

[9] *Privacy Policy*, GUARDIAN ANALYTICS (July 24, 2020), https://guardiananalytics.com/privacy-policy/.

31.     Actimize's website contains a privacy policy regarding the data it collects through its website, which states, "[y]our privacy is important to us," and goes on to state, "[Actimize] implements data security systems and procedures to secure the information stored on [Actimize] computer servers."[10]

32.     Webster Bank's website contains a webpage dedicated to customer privacy, which states, among other representations to customers: "Identity theft and fraud can turn your life upside down. We take the privacy and security of your information seriously and our number one goal is to give you peace of mind when it comes to your protection."[11]

33.     Webster Bank further represents on its website: "Any personal information that we collect in the course of daily business, and are required by Federal law to obtain, verify and record, is treated responsibly and kept secure. That is our commitment to you."[12]

34.     Additionally, Webster Bank's Privacy Policy lists the limited business purposes for sharing the Private Information entrusted to it, including "[f]or everyday business purposes," "marketing purposes," "joint marketing with other financial companies," "affiliates' everyday business purposes," and promises to "protect your personal information from unauthorized access and use."[13]

---

[10] *NICE Privacy Notice*, NICE (Dec. 30, 2021), https://www.nice.com/company/legal/privacy-policy.

[11] *Safety and security*, WEBSTER BANK, https://public.websteronline.com/security (last visited May 11, 2023).

[12] *Webster is committed to your privacy*, WEBSTER BANK, https://public.websteronline.com/security/privacy (last visited May 11, 2023).

[13] *Privacy and Opt-Out Notice*, WEBSTER BANK, https://public.websteronline.com/security/privacy/privacy-opt-out-notice (last visited May 11, 2023).

35.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

36.     Plaintiff and Class Members, who are past and current customers of Webster Bank and other banks, directly or indirectly entrusted Defendants with their sensitive and confidential information, including Private Information, some of which is static, meaning that it does not change and can be used to commit myriad financial crimes against Plaintiff and Class Members.

37.     Plaintiff and Class Members relied on Defendants to keep their Private Information confidential and securely maintained, to use the information for business purposes only, and to make only authorized disclosures of this information.

38.     Defendants had a duty to adopt reasonable measures to protect and safeguard the Private Information of Plaintiff and Class Members from unauthorized disclosure to third parties.

39.     Defendants failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted Private Information they were entrusted to maintain for Plaintiff and Class Members, causing the exposure of the Private Information.

40.     Defendants admit in the Notice of Data Breach that unauthorized third persons accessed files within Defendants' systems that contained Plaintiff's and Class Members' Private Information and subsequently posted the acquired files on the internet.

41.     The unencrypted Private Information of Plaintiff and Class Members will likely end up for sale on the dark web, subjecting Plaintiff and Class Members to the continued threat of identity theft and other fraudulent activity by unknown actors. Additionally, the Private Information may fall into the hands of companies that will use the information for targeted marketing without the approval of Plaintiff and Class Members.

**B.  The Data Breach**

42.     Between November 27, 2022, and January 22, 2023, unauthorized individuals had

access to Guardian Analytics' network systems. Guardian Analytics notified Webster Bank of the

Data Breach on January 26, 2023; however, Webster Bank delayed reporting the Data Breach to

Plaintiff, Class Members, and state authorities until on or around April 10, 2023.[14]

43.     Thus, Plaintiff's and Class Members' Private Information was in the hands of

cybercriminals for over two months before they were given any warning regarding the security of

their Private Information and the imminent risk of fraud and identity theft they now face.

44.     Defendants' Notice of Data Breach states as follows:

We wanted to make you aware of a data security incident that affected Guardian
Analytics, Inc. a third-party vendor that provides fraud detection services to
Webster Bank. This letter is to provide you with details of what happened, the
measures we have taken in response, and to provide you with details on proactive
steps you may consider to help protect your information.

**What Happened?**
On January 26, 2023, Webster learned that Guardian experienced a data security
incident that affected a select number of Webster clients. According to Guardian,
upon detecting the incident, Guardian immediately activated their incident response
plan and retained a third-party cybersecurity firm to conduct an investigation.
Guardian's investigation revealed that unauthorized third parties accessed certain
Guardian systems at various times between November 27, 2022 – January 22, 2023.
During that time, the unauthorized third parties acquired files that contained
Webster clients' personal information from Guardian's systems and later posted the
acquired files on the internet.

**What Information Was Involved?**
Webster reviewed the data that was taken from Guardian's systems and determined
that it contained some of your personal information: your name, Social Security
number and financial account number.

**What We Are Doing?**
Webster has retained third parties to assist with our independent investigation.
Additionally, Webster is working with Guardian to ensure they implement
enhanced security measures to safeguard their network, systems, and data,

---

[14] Notice of Data Breach, *supra* note 4.

including that of Webster's clients. Guardian informed Webster that it has notified law enforcement and is cooperating with their investigation.[15]

45.     Defendants' Notice of Data Breach admits that Plaintiff's and Class Members' Private Information was accessed via an external system data breach without authorization, exfiltrated by cybercriminals, and posted for sale on the internet.[16]

46.     Defendants did not state why they waited over two months before notifying Plaintiff and Class Members that their Private Information was compromised in the Data Breach.

47.     As to the details of the Data Breach itself and the events occurring between January 26, 2023 and April 10, 2023, Webster Bank informed the Maine Attorney General:

> According to Guardian, the investigation determined that at least one threat actor (the "Threat Actor") gained access to Guardian's environment on November 27, 2022, via a user's Virtual Private Network (VPN) connection to two (2) domain controllers. During the period of unauthorized access to Guardian's network, the Threat Actor obtained credentials to user accounts and leveraged those accounts to perform network reconnaissance, install remote access tools, and encrypt systems. The Threat Actor accessed and obtained files and folders at various times between November 27, 2022 and January 17, 2023. On or around January 14, 2023, the Threat Actor exfiltrated data from a non-production environment at Guardian.

> Beginning on or around January 20, 2023, two Threat Actors threatened Guardian with the release of the Stolen Data. One Threat Actor, associated with the Daixin ransomware group began posting Stolen Data in late January. Later, around February 10, 2023, the Lockbit ransomware gang began posting Stolen Data. Guardian has not offered an explanation on how two Threat Actors came to possess the Stolen Data. Guardian also confirmed they did not pay a ransom.[17]

48.     In the same communication to the Maine Attorney General, Webster Bank further states, "[o]n January 27, 2023, Webster's Information Security team identified Webster data on the

---

[15] *Id.*

[16] *Id.*

[17] Letter from David Kessler, Norton Rose Fulbright US LLP, to Office of the Maine Attorney General (April 10, 2023), *available at* https://apps.web.maine.gov/online/aeviewer/ME /40/a42f73e8-720b-41a2-b892-18181e799668.shtml (last visited May 10, 2023).

dark web."[18] On February 10, 2023, Guardian Analytics provided access to the data impacted by the Data Breach to Webster Bank; however, according to Webster Bank, Guardian Analytics "has only provided minimal cooperation and has provided no meaningful help in reviewing and analyzing the exfiltrated data."[19]

49.     Thus, despite knowing about the breach in January 2023 and knowing in February 2023 that the data was available on the dark web, Webster Bank did not provide notice to Plaintiff and Class Members until on or around April 10, 2023. Upon information and belief, Guardian Analytics' failure to cooperate delayed Webster Bank's ability to provide notice to Plaintiff and Class Members about the Data Breach.

50.     Defendants had obligations created by contract, industry standards, common law, federal and state law, and representations made to Plaintiff and Class Members to use reasonable data security procedures and practices to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure. They failed to comply with these obligations.

51.     Plaintiff and Class Members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

52.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

---

[18] *Id.*

[19] *Id.*

53.     Defendants knew or should have known that their electronic records would be targeted by cybercriminals.

**C.  Plaintiff Perry Baker's Experience**

54.     Plaintiff Perry Baker is a current Webster Bank customer and has been for approximately seven years.

55.     In order to open an account with Webster Bank, Plaintiff was required to provide his Private Information to Webster Bank, including his name, Social Security number, and financial information. Had Plaintiff known that Defendants employed substandard data security practices, Plaintiff would not have entrusted his Private Information to Defendants.

56.     At the time of the Data Breach—November 27, 2022 through January 17, 2023—Defendants retained Plaintiff's Private Information in its system.

57.     Plaintiff only allowed Defendants to maintain, store, and use his Private Information because he believed that Defendants would use reasonable security measures in compliance with applicable law to protect his Private Information. As a result, Plaintiff's Private Information was within the possession and control of Defendants at the time of the Data Breach.

58.     Plaintiff is very careful about sharing his sensitive Private Information. Plaintiff stores any documents containing his Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Moreover, Plaintiff diligently chooses unique usernames and passwords for his various online accounts.

59.     Plaintiff received the Notice of Data Breach, by U.S. mail, directly from Webster Bank, dated April 10, 2023. According to the Notice of Data Breach, Plaintiff's Private

Information was improperly accessed and obtained by unauthorized third parties, including his name and financial account information.

60.     As a result of the Data Breach, and at the direction of Defendants' Notice of Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to, monitoring his credit and reviewing his financial accounts for any indication of fraudulent activity. Plaintiff has spent significant time dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

61.     Plaintiff suffered actual injury from having his Private Information compromised as a result of the Data Breach, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of his Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) loss of the benefit of his bargain with Defendants; (v) the disclosure of his Private Information; and (vi) the continued and certainly increased risk to his Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendants' possession and subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

62.     The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendants still have not fully informed him of key details about the Data Breach's occurrence.

63.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and to address harms caused by the Data Breach. As

a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

64.     Webster Bank acknowledges the risk posed to Plaintiff and his Private Information. Indeed, Webster Bank has offered 24 months of identity monitoring services through Experian.

65.     Plaintiff has continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

**D. Defendants Failed to Properly Protect Plaintiff's and Class Members' Private Information**

66.     As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[20]

67.     To prevent and detect cyber-attacks and/or ransomware attaches, Defendants could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

---

[20] Fed. Bureau of Investigation, *How to Protect Your Networks from Ransomware* 3, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited May 11, 2023).

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[21]

68.     To prevent and detect cyber-attacks, including the cyber-attack that resulted in the

Data Breach, Defendants could and should have implemented, as recommended by the United

States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer.** Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks . . . .

---

[21] *Id.* at 3–4.

- **Use caution with links and when entering website addresses.** Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net) . . . .

- **Open email attachments with caution.** Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe.** Check a website's security to ensure the information you submit is encrypted before you provide it . . . .

- **Verify email senders.** If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself.** Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs.** Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic . . . .[22]

69.    The United States Cybersecurity & Infrastructure Security Agency makes the following additional recommendation to protect an organization's data and networks:

- **Train your organization.** Organizations should ensure that they provide cybersecurity awareness training to their personnel. Ideally, organizations will have regular, mandatory cybersecurity awareness training sessions to ensure their personnel are informed about current cybersecurity threats and threat actor techniques. To improve workforce awareness, organizations can test their personnel with phishing assessments that simulate real-world phishing emails.[23]

---

[22] *Protecting Against Ransomware*, CYBERSECURITY & INFRASTRUCTURE SEC. AGENCY (Sept. 2, 2021), https://www.cisa.gov/news-events/news/protecting-against-ransomware.

[23] *Id.*

70.     To prevent and detect cyber-attacks, including the cyber-attack that resulted in the

Data Breach, Defendants could and should have implemented, as recommended by the Microsoft

Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**
-       Apply latest security updates
-       Use threat and vulnerability management
-       Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**
-       Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**
-       Ensure collaboration among [security operations], [security admins], and
        [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**
-       Use [multifactor authentication] or [network level authentication] and use strong,
        randomized, just-in-time local admin passwords

**Apply principle of least-privilege**
-       Monitor for adversarial activities
-       Hunt for brute force attempts
-       Monitor for cleanup of Event Logs
-       Analyze logon events

**Harden infrastructure**
-       Use Windows Defender Firewall
-       Enable tamper protection
-       Enable cloud-delivered protection
-       Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office
        [Visual Basic for Applications].[24]

71.     Given that Defendants were storing the Private Information of Plaintiff and Class

Members, Defendants could and should have implemented all of the above measures to prevent

and detect ransomware attacks.

---

[24] *Human-operated ransomware attacks: A preventable disaster*, MICROSOFT SECURITY
(Mar.   5,   2020),   https://www.microsoft.com/en-us/security/blog/2020/03/05/human-operated-
ransomware-attacks-a-preventable-disaster/.

72.     Defendants could have prevented this Data Breach by properly securing and encrypting the systems containing the Private Information of Plaintiff and Class Members. Alternatively, Defendants could have destroyed the data, especially for individuals with whom it had not had a relationship for a decade or more.

73.     The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the Private Information of Plaintiff and Class Members.

74.     Defendants' negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to companies like Defendants to protect and secure sensitive data they possess.

75.     Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

76.     The Federal Trade Commission ("FTC") defines "identity theft" as "a fraud committed or attempted using the identifying information of another person without authority."[25] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[26]

_____

[25] 17 C.F.R. § 248.201(b)(9).

[26] *Id.* § 248.201(b)(8).

77.    The ramifications of Defendants' failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

**E.  Defendants Failed to Comply with FTC Guidelines**

78.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.[27]

79.    In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[28] The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

---

[27] *See, e.g.*, *Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

[28] Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business* (2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

80.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

81.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

82.     As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

83.     Defendants were at all times fully aware of their obligation to protect the Private Information of their customers yet failed to comply with such obligations. Defendants were also aware of the significant repercussions that would result from their failure to do so.

F.  **Defendants Failed to Comply with Industry Standards**

84.     Experts studying cybersecurity routinely identify businesses, and especially financial institutions, as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

85.     Some general industry best practices that should be implemented by businesses like Defendants include but are not limited to: educating all employees, using only strong password

requirements, implementing multilayer security including firewalls, anti-virus and anti-malware software, using encryption, requiring multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

86.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

87.    Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1[29] (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls[30] (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

88.    Defendants failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

---

[29] Nat'l Inst. of Standards & Tech., *Framework for Improving Critical Infrastructure Cybersecurity* (2018), *available at* https://nvlpubs.nist.gov/nistpubs/CSWP/NIST.CSWP.04 162018.pdf.

[30] *See The 18 CIS Critical Security Controls*, CTR. FOR INTERNET SEC., https://www.cisecurity.org/controls/cis-controls-list (last visited May 11, 2023).

**G.  Defendants Failed to Comply with Federal Law Concerning the Protection of Financial Institution Customers' Personal Information**

89.     Webster Bank is a financial institution, as that term is defined by Section 509(3)(A) of the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6809(3)(A), and thus subject to the GLBA.

90.     The GLBA defines a financial institution as "any institution the business of which is engaging in financial activities as described in Section 1843(k) of Title 12 [The Bank Holding Company Act of 1956]."[31]

91.     Webster Bank collects nonpublic personal information, as defined by 15 U.S.C. § 6809(4)(A), 16 C.F.R. § 313.3(n), and 12 C.F.R. § 1016.3(p)(1). Accordingly, during the relevant time period, Webster Bank was subject to the requirements of the GLBA, 15 U.S.C. §§ 6801.1, *et seq.*, and is subject to numerous rules and regulations promulgated on the GLBA statutes.

92.     The Safeguards Rule, which implements Section 501(b) of the GLBA, 15 U.S.C. § 6801(b), requires financial institutions to protect the security, confidentiality, and integrity of customer information by developing a comprehensive written information security program that contains reasonable administrative, technical, and physical safeguards, including: (1) designating one or more employees to coordinate the information security program; (2) identifying reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information, and assessing the sufficiency of any safeguards in place to control those risks; (3) designing and implementing information safeguards to control the risks identified through risk assessment, and regularly testing or otherwise monitoring the effectiveness of the safeguards' key controls, systems, and procedures; (4) overseeing service providers and requiring them by contract

---

[31] 15 U.S.C. § 6809(3)(A).

to protect the security and confidentiality of customer information; and (5) evaluating and adjusting the information security program in light of the results of testing and monitoring, changes to the business operation, and other relevant circumstances.[32] The regulation's provisions became effective in July 2001 and have steered the discussion of customer information protection in banking ever since. Nevertheless, as the Data Breach demonstrates, Defendant failed to live up to these cybersecurity obligations.

93.     As alleged herein, Defendants violated the Safeguard Rule.

94.     Defendants failed to assess reasonably foreseeable risks to the security, confidentiality, and integrity of customer information.

95.     The Federal Deposit Insurance Corporation ("FDIC") guidance to banks regarding unauthorized access to customer information defines "sensitive customer information" to mean "a customer's name, address or telephone number in conjunction with the customer's Social Security number, driver's license number, account number, credit or debit card number, or a personal identification number or password that would permit access to the customer's account."[33]

96.     Here Webster Bank told the Maine Attorney General that the Data Breach concerned its customers' names, financial account numbers, and in some instances their Social Security numbers. As such, there is no question that the data involved here is what the FDIC would term sensitive customer information.

97.     The FDIC guidance further requires banks to notify its customers of a data breach "whenever it becomes aware of an incident of unauthorized access to customer information and,

---

[32] 16 C.F.R. §§ 314.3–.4.

[33] Fed. Deposit Insurance Corp., Guidance on Response Programs for Unauthorized Access to Customer Information and Customer Notice, FIL-27-2005 (Apr. 1, 2005), *available at* https://www.fdic.gov/news/financial-institution-letters/2005/fil2705.html.

at the conclusion of a reasonable investigation, determines that misuse of the information has occurred or it is reasonably possible that misuse will occur."[34] In interpreting this guidance, banking industry groups recommend that banks provide notice to their customers "as soon as possible."[35]

98.     Webster Bank knew at least by late January or early February that their data was on the dark web, and thus knew that misuse of the stolen information had occurred. Under those circumstances, it appears clear that Webster Bank delayed too long in notifying its customers when it finally did so in April 2023, and that Guardian Analytics actively frustrated Webster Bank's ability to provide such notice in a timely manner.

99.     In addition, federal regulations require banks to closely oversee security at third party vendors. Given the circumstances of the instant Data Breach, it is apparent that Webster Bank also failed to fulfill this requirement.

**H. Defendants Knew or Should Have Known of the Risk to Customers' Private Information Because Financial Companies in Possession of Private Information are Particularly Susceptive to Cyberattacks**

100.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches targeting entities that collect and store PII and other sensitive information, like Defendants, preceding the date of the Data Breach.

101.     In light of recent high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019). Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January

---

[34] *Id.*

[35] *Data Security & Customer Notification Requirements for Banks*, AM. BANKERS ASS'N (Sept. 21, 2021), https://www.aba.com/news-research/analysis-guides/data-security-customer-notification.

2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendants knew or should have known that the Private Information that they collect and maintain would be targeted by cybercriminals.

102. Data thieves regularly target companies like Defendants due to the highly sensitive information that they record and maintain. Defendants knew and understood that unprotected PII is valuable and highly sought after by criminal parties who seek to illegally monetize that PII through unauthorized access.

103. Indeed, cyber-attacks, such as the one experienced by Defendants, have become so notorious that the Federal Bureau of Investigation and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, smaller entities that store PII are "attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[36]

104. In 2021, a record of 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[37] The trend continued through 2022, as 1,802 data breaches occurred, resulting in approximately 422,143,312 sensitive records being exposed.[38]

---

[36] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[37] *See* Identity Theft Res. Ctr., *2021 Annual Data Breach Report* (2021), *available at* https://www.idtheftcenter.org/publication/2021-annual-data-breach-report-2/.

[38] *See* Identity Theft Res. Ctr., *2022 Data Breach Report* (2022), *available at* https://www.idtheftcenter.org/publication/2022-data-breach-report/.

105.     Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

106.     At all relevant times, Defendant, as a custodian of PII, knew or reasonably should have known of the importance of safeguarding the Private Information of Plaintiff and Class Members and of the foreseeable consequences that would occur if Defendants' data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

107.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' systems, amounting to potentially thousands of individuals' detailed, Private Information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

108.     In the Notice of Data Breach, Webster Bank makes an offer of 24 months of identity monitoring services. This is wholly inadequate to compensate Plaintiff and Class Members, as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiff's and Class Members' Private Information.

109.     Webster Bank's offer of credit and identity monitoring establishes that Plaintiff's and Class Members' sensitive Private Information *was* in fact affected, accessed, compromised, and exfiltrated from Defendants' computer systems.

110.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

111.    The ramifications of  Defendants' failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen— particularly Social Security numbers—fraudulent use of that information and damage to victims may continue for years.

112.    As a financial institution in possession of its current and former customers' Private Information, Webster Bank knew or should have known the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members and of the foreseeable consequences if its data security systems were breached. Similarly, as providers of fraud detection services, Guardian Analytics and Actimize also knew or should have known the importance of safeguarding the Private Information of Plaintiff and Class Members and of the foreseeable consequences of breaches to their data security systems. This includes the significant costs imposed on Plaintiff and Class Members as a result of the Data Breach. Nevertheless, Defendants failed to take adequate cybersecurity measures to prevent the Data Breach.

**I.   The Value of PII – Data Breaches Lead to Identity Theft and Cognizable Injuries**

113.    The PII of consumers, such as Plaintiff and Class Members, is valuable and has been commoditized in recent years.

114.    It is well known among companies that store sensitive PII that such information— such as the Social Security numbers and financial information stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, Business Insider noted that

"[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[39]

115.    PII is a valuable property right.[40] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[41] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[42] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

116.    As a result of the real and significant value of these data, identity thieves and other cyber criminals have openly posted credit card numbers, Social Security numbers, PII, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated with other such data and become more valuable to thieves and more damaging to victims.

---

[39] Dennis Green et al., *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[40] *See* Marc van Lieshout, *The Value of Personal Data*, 457 INT'L FED'N FOR INFO. PROCESSING 26, 29 (2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . . ."), *available at* https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[41] Org. for Econ. Cooperation & Dev., *Exploring the Economics of Personal Data: A Survey or Methodologies for Measuring Monetary Value* 4 (2013), *available at* https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[42] Interactive Advertising Bureau, *U.S. Firms to Spend Nearly 19.2 Billion on Third-Party Audience Data & Data-Use Solution in 2018, Up 17.5% From 2017*, IAB (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

117.    Consumers place a high value on the privacy of their data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "[w]hen [privacy policy] information is made available, consumers tend to purchase from online retailers who better protect their privacy."[43]

118.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has deprived that consumer of the full monetary value of the consumer's transaction with the company.

119.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[44] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[45] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[46]

120.    Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an

---

[43] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study*, 22(2) INFO. SYSTEMS RES. 254, 254 (2011), *available at* https://www.jstor.org/stable/23015560?seq=1.

[44] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs*, DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[45] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[46] *In the Dark*, VPNOVERVIEW, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited May 15, 2023).

individual's Social Security number, as is the case here, can lead to identity theft and extensive

financial fraud:

> A dishonest person who has your Social Security number can use it to get other
> personal information about you. Identity thieves can use your number and your
> good credit to apply for more credit in your name. Then, they use the credit cards
> and don't pay the bills, it damages your credit. You may not find out that someone
> is using your number until you're turned down for credit, or you begin to get calls
> from unknown creditors demanding payment for items you never bought. Someone
> illegally using your Social Security number and assuming your identity can cause
> a lot of problems.[47]

121.    What is more, it is no easy task to change or cancel a stolen Social Security number.

An individual cannot obtain a new Social Security number without significant paperwork and

evidence of actual misuse. In other words, preventive action to defend against the possibility of

misuse of a Social Security number is not permitted; an individual must show evidence of actual,

ongoing fraud activity to obtain a new number.

122.    Even then, a new Social Security number may not be effective. According to Julie

Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the

new number very quickly to the old number, so all of that old bad information is quickly inherited

into the new Social Security number."[48]

123.    This data demands a much higher price on the black market. Martin Walter, senior

director at cybersecurity firm RedSeal, explained, "Compared to credit card information,

---

[47] Soc. Sec. Admin., Pub. No. 05-10064, *Identity Theft and Your Social Security Number* 1
(2021), *available at* https://www.ssa.gov/pubs/EN-05-10064.pdf.

[48] Brian Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*,
NPR (Feb. 9, 2015), https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-
hackers-has-millions-worrying-about-identity-theft.

personally identifiable information and Social Security numbers are worth more than 10x on the black market."[49]

124.   Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police. The fraudulent activity resulting from the Data Breach may not come to light for years.

125.   At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members, including Social Security numbers, and of the foreseeable consequences that would occur if Defendants' data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

126.   Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

127.   To date, Defendants have offered Plaintiff and Class Members only 24 months of identity and credit monitoring services through Experian. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here. Moreover, Defendants put the burden squarely on Plaintiff and Class Members to enroll in the inadequate monitoring services.

128.   As a direct and proximate result of Defendants' failures to prevent—and to timely detect—the Data Breach, Plaintiff and the Class Members have suffered and will continue to suffer

---

[49] Tim Greene, *Anthem hack: Personal data stolen sells for 10x price of stolen credit card numbers*, NETWORKWORLD (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a.   The loss of the opportunity to control how their Private Information is used;

    b.   The diminution in value of their Private Information;

    c.   The compromise and continuing publication of their Private Information;

    d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.   Unauthorized use of stolen Private Information; and

    g.   The continued risk to their Private Information, which remains in the possession of Defendants and is subject to further breaches so long as Defendants fail to undertake the appropriate measures to protect the Private Information in their possession.

129.    Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen PII. To protect themselves, Plaintiff and Class Members will need to remain vigilant against unauthorized data use for years or even decades to come.

130.    According to the FTC, unauthorized PII disclosures are extremely damaging to consumers' finances, credit history and reputation, and can take time, money and patience to

resolve the fallout.[50] As such, the FTC treats the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

131.    Defendants' failure to properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

## CLASS ACTION ALLEGATIONS

132.    Plaintiff brings this nationwide class action on behalf of himself and on behalf of other similarly situated persons.

133.    The Nationwide Class that Plaintiff seeks to represent is defined as follows:

All individuals residing in the United States whose PII was accessed and/or acquired by an unauthorized party as a result of the Data Breach reported by Defendants on or about April 10, 2023 and April 28, 2023 (the "Class").

134.    Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers, directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, was well as their immediate family members.

---

[50] Fed. Trade Comm'n, NCJ No. 238946, *Taking Charge: What to Do if Your Identity Is Stolen* 3 (2012), *available at* https://www.ojp.gov/ncjrs/virtual-library/abstracts/taking-charge-what-do-if-your-identity-stolen.

135.     Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

136.     **Numerosity:** The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, there are hundreds or thousands of individuals whose Private Information may have been improperly accessed in the Data Breach, and each Class Member is apparently identifiable within Defendants' records.

137.     **Commonality:** Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include, without limitation:

a.   Whether and to what extent Defendants had a duty to protect Plaintiff's and Class Members' Private Information;

b.   Whether Defendants had duties not to disclose the Plaintiff's and Class Members' Private Information to unauthorized third parties;

c.   Whether Defendants had duties not to use Plaintiff's and Class Members' Private Information for unauthorized purposes;

d.   Whether Defendants failed to adequately safeguard Plaintiff's and Class Members' Private Information;

e.   Whether and when Defendants actually learned of the Data Breach;

f.   Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g.   Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.   Whether Defendants violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

i.   Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.   Whether Defendants engaged in unfair, unlawful, or deceptive practices by misrepresenting that they would safeguard Plaintiff's and Class Members' Private Information;

k.   Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendants' wrongful conduct;

l.   Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct; and

m.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

138.   **Typicality:** Plaintiff's claims are typical of those of other Class Members because all had their Private Information compromised as a result of the Data Breach, due to Defendants' misfeasance.

139.   **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class, and the infringement of the rights and the damages Plaintiff

has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

140. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

141. **Predominance:** Defendants have engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

142. **Superiority and Manageability:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication or relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for

those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

143.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonable consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

144.    The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

145.    Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

146.    Unless a Class-wide injunction is issued, Defendants may continue in their unlawful disclosure and failure to properly secure the Private Information of Class Members, Defendants may continue to refuse to provide proper notification to Class Members regarding the Disclosure, and Defendants may continue to act unlawfully as set forth in this Complaint.

147.    Furthermore, Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

148.    Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.  Whether Defendants owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b.  Whether Defendants breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c.  Whether Defendants failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d.  Whether an implied contract existed between Defendants on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

e.  Whether Defendants breached the implied contract;

f.  Whether Defendants adequately and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

g.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.  Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and Class Members' Private Information; and

i.   Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendants' wrongful conduct.

## CAUSES OF ACTION

## COUNT I
**Negligence**
**(On Behalf of Plaintiff and the Class)**

149.   Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

150.   Plaintiff and Class Members entrusted Defendants with their Private Information.

151.   Plaintiff and Class Members entrusted their Private Information to Defendants on the premise and with the understanding that Defendants would safeguard their information, use their information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

152.   Defendants have full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if their Private Information were wrongfully disclosed.

153.   Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using the Private Information of Plaintiff and Class Members involved an unreasonable risk of harm to Plaintiff and Class Members.

154.   By accepting, storing, and maintaining Plaintiff's and Class Members' Private Information, Defendants undertook a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and

testing Defendants' security protocols to ensure that the Private Information of Plaintiff and Class Members in Defendant's possession was adequately secured and protected.

155.     By accepting, storing, and maintaining Plaintiff's and Class Members' Private Information, Defendants also had a duty to exercise appropriate clearinghouse practices to remove Private Information they were no longer required to retain pursuant to regulations.

156.     By accepting, storing, and maintaining Plaintiff's and Class Members' Private Information, Defendants also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Private Information of Plaintiff and Class Members.

157.     Defendants' duty to use reasonable security measures arose as a result of the special relationship that existed between Defendants and Plaintiff and Class Members. That special relationship arose because Plaintiff and Class Members entrusted Defendants with their confidential Private Information, a necessary part of obtaining services from Defendants.

158.     A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of Defendants' inadequate security practices.

159.     Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and Class Members, the critical importance of providing adequate security of their Private Information, and the necessity for encrypting Private Information stored on Defendants' systems.

160.     Defendants' own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendants' misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendants' misconduct also

included their decisions not to comply with industry standards for the safekeeping of the Private Information of Plaintiff and Class Members, including basic encryption techniques freely available to Defendants.

161.    Defendants knew or should have known that Plaintiff's and Class Members' Private Information was stored on their databases and were or should have been aware of the extreme risks associated with failing to properly safeguard Plaintiff's and Class Members' Private Information.

162.    Despite being aware of the likelihood that Defendants' databases were vulnerable, not secure, and likely to be attacked by cybercriminals, Defendants failed to correct, update, or upgrade its security protections, thus causing the Data Breach.

163.    Plaintiff and Class Members had no ability to protect their Private Information that was in, and possibly remains in, Defendants' possession.

164.    Defendants were in the best position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

165.    Defendants had and continue to have a duty to adequately disclose that the Private Information of Plaintiff and Class Members within Defendants' possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

166.    Defendants have admitted that the Private Information of Plaintiff and Class Members was disclosed due to "unauthorized third parties access[ing] certain Guardian systems" and thus also accessed and exfiltrated by unauthorized third persons as a result of the Data Breach.

167.     Defendants improperly and inadequately safeguarded the Private Information of Plaintiff and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

168.     Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and Class Members during the time the Private Information was within Defendants' possession or control.

169.     Defendants failed to heed industry warnings and alerts to provide adequate safeguards to protect the Private Information of Plaintiff and Class Members in the face of increased risk of theft.

170.     Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Private Information.

171.     Defendants breached their duty to exercise appropriate clearinghouse practices by failing to remove Private Information they were no longer required to retain pursuant to regulations.

172.     Defendants, through their actions and/or omissions, unlawfully breached their duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

173.     But for Defendants' wrongful and negligent breach of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

174.    Said differently, if Defendants had properly prevented third party access, then the Data Breach would not have occurred and Plaintiff's and Class Members' Private Information would have been appropriately safeguarded.

175.    Plaintiff and Class Members suffered an injury when their Private Information was accessed by unknown third parties.

176.    There is a close causal connection between Defendants' failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm, and increased risk of imminent harm, suffered by Plaintiff and Class Members.

177.    The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

178.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information

of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

179.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

180.    In failing to secure Plaintiff's and Class Members' Private Information, Defendants are guilty of oppression, fraud, or malice. Defendants acted or failed to act with a reckless, willful, or conscious disregard of Plaintiff's and Class Members' rights. Plaintiff, in addition to seeking actual damages, also seeks punitive damages on behalf of himself and the Class.

181.    Defendants' negligent conduct directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class Members' Private Information, and as a result, Plaintiff and Class Members have suffered and will continue to suffer damages as a result of Defendants' conduct. Plaintiff and Class Members seek actual, compensatory, and punitive damages, and all other relief they may be entitled to as a proximate result of Defendant's negligence.

## COUNT II
### Negligence Per Se
### (On Behalf of Plaintiff and the Class)

182.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

183.    Plaintiff alleges this negligence *per se* theory as alternative to his other negligence claims (Count I).

184.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above and the industry-standard cybersecurity measures also set forth above form part of the basis of Defendants' duty in this regard.

185.    Pursuant to Section 5 of the FTCA, Defendants had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and Class Members.

186.    Defendants violated Section 5 of the FTCA by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII they maintained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

187.    Defendants breached their duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to: proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

188.    Plaintiff and Class Members are within the class of persons that the FTCA is intended to protect.

189.    It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiff's and

Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Defendants' networks, databases, and computers that stored Plaintiff's and Class Members' unencrypted Private Information.

190.   Defendants' violations of Section 5 of the FTCA constitute negligence.

191.   Defendants violated the GLBA and its Safeguards Rule by failing to assess reasonably foreseeable risks to the security, confidentiality, and integrity of customer information; failing to adequately test and/or monitor the system where the Data Breach occurred; failing to adequately monitor security the security measures of third-party vendors; and failing to adequately update and/or further secure its data security practices in light of the heightened risk environment.

192.   Plaintiff and Class Members are within the class of persons the GLBA and its Safeguards Rule are intended to protect.

193.   Defendants' violation of the GLBA and its Safeguards Rule constitutes negligence.

194.   The harm that occurred as a result of the Data Breach is the type of harm the FTCA and GLBA were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members. The GLBA, with its Safeguards Rule, was similarly intended to guard against the harm that occurred as a result of the Data Breach.

195.   A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of Defendants' inadequate security practices.

196.   It was foreseeable that Defendants' failure to use reasonable measures to protect Plaintiff's and Class Members' PII would result in injury to Plaintiff and Class Members. Further,

Data Breach was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the financial services industry.

197.   Defendants have full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if their PII were wrongfully disclosed.

198.   Plaintiff and Class Members were the foreseeable and probably victims of any inadequate security practices and procedures. Defendants knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and Class Members, the critical importance of providing adequate security of that PII, and the necessity of encrypting PII stored on Defendants' systems.

199.   Plaintiff's and Class Members' Private Information constitutes personal property that was stolen due to Defendants' negligence, resulting in harm, injury, and damages to Plaintiff and Class Members.

200.   Defendants breached their duties to Plaintiff and Class Members under the FTCA and GLBA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

201.   As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching

how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

202.    Defendants' conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiff's and Class Members' Private Information, and as a result, Plaintiff and Class Members have suffered and will continue to suffer damages as a result of Defendants' conduct. Plaintiff and Class Members seek actual, compensatory, and punitive damages, and all other relief they may be entitled to as a proximate result of Defendants' negligence *per se*.

### COUNT III
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

203.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

204.    Plaintiff and Class Members were required to provide Defendants for the purposes of this Count) with their Private Information as a condition of obtaining services from Defendants. Defendants required Plaintiff and Class Members to provide their Private Information as part of Defendants' regular business practices. Plaintiff and Class Members accepted Defendants' offers and provided their Private Information to Defendants.

205.     Plaintiff and Class Members provided their Private Information to Defendants in exchange for (among other things) Defendants' promise to protect their Private Information from unauthorized disclosure and to delete it once it was no longer required to maintain it.

206.     On information and belief, at all relevant times, Defendants promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

207.     On information and belief, Defendants further promised to comply with industry standards to make sure that Plaintiff's and Class Members' Private Information would remain protected.

208.     Plaintiff and Class Members, by providing their Private Information, and Defendant, by accepting this Private Information, mutually assented to implied contracts. Implicit in these agreements were Defendant's obligations to: (1) use such Private Information for business purposes only; (2) take reasonable steps to safeguard that Private Information; (3) prevent unauthorized disclosure of the Private Information; (4) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information; (5) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses; (6) retain the Private Information only under conditions that kept such information secure and confidential; and (7) delete or destroy Private Information after it was no longer necessary to retain it.

209.     Defendants provided consideration by providing its financial services, while Plaintiff and Class Members provided consideration by providing valuable property, their Private

Information. Defendants benefitted from the receipt of this Private Information by increasing profit from additional business.

210.   In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security and retention practices complied with relevant representations, laws, and regulations and were consistent with industry standards.

211.   Plaintiff and Class Members would not have entrusted their Private Information to Defendants in the absence of the implied contract between them and Defendants to keep their information reasonably secure, delete Plaintiff's and Class Members' Private Information once it was no longer necessary, and adopt reasonable data security and monitoring practices to safeguard Plaintiff's and Class Members' Private Information.

212.   Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

213.   Defendants materially breached its implied contracts with Plaintiff and Class Members when it (1) disclosed Plaintiff's and Class Members' Private Information to an unauthorized third party; (2) failed to properly safeguard and protect Plaintiff's and Class Members' Private Information; (3) violated industry standards as well as legal obligations that are necessarily incorporated into the implied contract between Plaintiff, Class Members, and Defendant; and (4) waited an unreasonably long time to notify Plaintiff and Class Members of the Data Breach. It is common sense that Plaintiff and Class Members would not have provided Defendants with their Private Information had they known that Defendant would not implement basic data security measures or that Defendant would wait several months to notify them of a data breach involving their Private Information.

214.    Defendants' breaches of contract have caused Plaintiff and Class Members to suffer damages from the lost benefit of their bargain, out of pocket monetary losses and expenses, loss of time, and diminution of the value of their Private Information.

215.    As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff and Class Members have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

216.    As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff and Class Members are entitled to recover actual, consequential, and nominal damages.

<u>**COUNT IV**</u>
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

217.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

218.    Plaintiff alleges this unjust enrichment theory as alternative to his breach of implied contract claims (Count III).

219.    Plaintiff and Class Members conferred a monetary benefit upon Defendants when they provided their Private Information to Defendants and paid for services that should have

included cybersecurity protection to protect their Private Information. Plaintiff and Class Members did not receive such protection.

220.    Upon information and belief, the monies paid by Plaintiff and Class Members to Webster Bank were used by Webster Bank, in part, to pay Guardian and Actimize.

221.    Defendants knew that Plaintiff and Class Members conferred a monetary benefit to Defendants and accepted and retained that benefit. Defendants profited from this monetary benefit, as the transmission of Private Information to Defendants from Plaintiff and Class Members is an integral part of Defendants' businesses. Without collecting and maintaining Plaintiff's and Class Members' Private Information, Defendants would be unable to offer financial and other services.

222.    Defendants have retained the benefits of its unlawful conduct, including the amounts of payment received from Plaintiff and Class Members that should have been used for adequate cybersecurity practices that they failed to provide.

223.    Defendants were supposed to use some of the monetary benefit provided to them by Plaintiff and Class Members to secure the Private Information belonging to Plaintiff and Class Members by paying for costs of adequate data management and security.

224.    Defendants should not be permitted to retain any monetary benefit belonging to Plaintiff and Class Members because Defendants failed to implement necessary security measures to protect the Private Information of Plaintiff and Class Members.

225.    Defendants gained access to Plaintiff's and Class Members' Private Information through inequitable means because Defendants failed to disclose that it used inadequate security measures.

226.    Plaintiff and Class Members were unaware of the inadequate security measures and would not have entrusted their Private Information to Defendants had they known of the inadequate security measures.

227.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and or are at an impending and substantial risk of suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

228.    Additionally, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures, and those payments without reasonable data privacy and security practices and procedures that they received.

229.     Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

230.     Plaintiff and Class Members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT V**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

231.     Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

232.     In light of the special relationship between Defendants and Plaintiff and Class Members, whereby Defendants became guardian of Plaintiff's and Class Members' Private Information, Defendants became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for Plaintiff and Class Members by (i) safeguarding Plaintiff's and Class Members' Private Information; (ii) timely notifying Plaintiff and Class Members of any unauthorized disclosure, such as the Data Breach; and (iii) maintaining complete and accurate records the information Defendants store.

233.     Defendants have a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendants' relationship with its customers, in particular, to keep secure their Private Information.

234.   Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to diligently discovery, investigate, and give notice of the Data Breach in a reasonable and practicable period.

235.   Defendants breached their fiduciary duties to Plaintiff and Class Members by failing to maintain adequate data security and monitoring methods necessary to safeguard and protect the confidentiality of Plaintiff's and Class Members' Private Information.

236.   Defendants breached their fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

237.   As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information in their continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (vii) the diminished value of the services purchased from Defendants.

238.   Accordingly, Plaintiff seeks all monetary and non-monetary relief allowed by law.

## COUNT VI
### Invasion of Privacy
### (On Behalf of Plaintiff and the Class)

239.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

240.    Plaintiff and Class Members maintain a privacy interest in their Private Information, which is private, confidential information that is also protected from disclosure by applicable laws set forth above.

241.    Plaintiff's and Class Members' Private Information was contained, stored, and managed electronically in Defendants' records, computers, and databases and was intended to be secured from unauthorized access to third-parties because highly sensitive, confidential matters regarding Plaintiff's and Class Members' identities were only shared with Defendants for the limited purpose of obtaining and paying for Defendants' services.

242.    Additionally, Plaintiff's and Class Members' Private Information is highly attractive to criminals who can nefariously use such Private Information for fraud, identity theft, and other crimes without the victims' knowledge or consent.

243.    Plaintiff and Class Members communicated sensitive Private Information that they intended for only Defendants to receive and that they understood Defendants would keep private.

244.    Plaintiff and Class Members have a reasonable expectation that Defendants would safeguard the confidentiality of their Private Information and not disclose their Private Information to third parties without Plaintiff's or Class Members' authorization, consent, or knowledge.

245.    Plaintiff and Class Members had a reasonable expectation of privacy given Defendants' representations, the FTCA, and the GLBA. Moreover, Plaintiff and Class Members

have a general expectation that their Private Information provided to their financial institution will be kept confidential.

246.   Defendants owed a duty to Plaintiff and Class Members to keep their Private Information confidential. Defendants failed to protect and, instead, released to unknown and unauthorized third parties the non-redacted and non-encrypted Private Information of Plaintiff and Class Members.

247.   Defendants' actions gave publicity to the Private Information of Plaintiff and Class Members.

248.   Defendant's failure to protect and maintain the confidentiality of Plaintiff's and Class Members' Private Information and resulting disclosure of this Private Information to unauthorized third parties is highly offensive to the reasonable person. Defendants' disclosure of Plaintiff's and Class Members' Private Information to unauthorized third parties permitted the physical and electronic intrusion into private quarters where Plaintiff's and Class Members' Private Information was stored.

249.   Plaintiff and Class Members did not authorize, consent, know about, or take any action to indicate consent to Defendants' conduct alleged herein.

250.   There is no legitimate public concern with respect to the Private Information of Plaintiff and Class Members.

251.   The intrusion was into a place or thing which was private and is entitled to be private. Plaintiff and Class Members disclosed their Private Information to Webster Bank as part of their banking relationship with Webster Bank, but privately and with the intention that the Private Information would be kept confidential and would be protected from unauthorized

disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

252.    Defendants acted with a knowing state of mind when they permitted the Data Breach to occur because they had actual knowledge that their information security practices were inadequate and insufficient.

253.    As a result of Defendant's public disclosure of Plaintiff's and Class Members' Private Information, Plaintiff and Class Members have been needlessly harmed by having their Private Information disseminated for profit by unknown and unauthorized actors on the dark web.

254.    Plaintiff and Class Members have been damaged as a direct and proximate result of Defendants' invasion of their privacy and are entitled to just compensation, including monetary damages.

255.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that is just and proper.

256.    Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendants' actions, directed at injuring Plaintiff and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendants from engaging in such conduct in the future.

**COUNT VII**
**Violation of Connecticut Unfair Trade Practices Act**
**General Statutes of Connecticut §§ 42-110a, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

257.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

258.    The Connecticut Unfair Trade Practices Act ("CUTPA") states, "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[51]

259.    Plaintiff, Class Members, and Defendants are "persons" under CUTPA.[52]

260.    The services that Defendants provide are "trade" and "commerce" pursuant to CUTPA.[53]

261.    Webster Bank made representations to Plaintiff and Class Members that their Private Information will remain private, as evidenced by, *inter alia*, its representations regarding privacy on its website. Webster Bank committed deceptive acts in violation of CUTPA by failing to inform Plaintiff and Class Members that Webster Bank would not adequately secure Plaintiff's and Class Members' Private Information by contracting with parties that did not have adequate safeguards in place to protect their Private Information.

262.    All Defendants engaged in unfair acts in violation of CUTPA by failing to implement and maintain reasonable security measures to protect and secure Plaintiff's and Class Members' Private Information in a manner that complied with applicable laws, regulations, and industry standards. The failure to implement and maintain reasonable data security measures offends established public policy, is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

263.    Due to the Data Breach, Plaintiff and Class Members have lost property in the form of their Private Information. Further, Defendants' failure to adopt reasonable practices in

---

[51] CONN. GEN STAT. § 42-110b.

[52] *Id.* § 42-110a.

[53] *Id.* § 42-110a.

protecting and safeguarding their customers' Private Information will force Plaintiff and Class Members to spend time and/or money to protect against identity theft, fraud, and other crimes. Plaintiff and Class Members are now at a higher risk of identity theft, fraud, other crimes. This harm sufficiently outweighs any justifications or motives for Defendants' practice of collecting and storing Private Information without appropriate and reasonable safeguards to protect such information.

264.    Plaintiff and Class Members were damaged by Defendants' violation of CUTPA because: (i) they paid—directly or through their insurers—for data security protection they did not receive; (ii) they face a substantially increased and imminent risk of identity theft—a risk justifying or necessitating expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Private Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Private Information has been breached; (v) they were deprived of the value of their Private Information, for which there is a well-established national and international market; (vi) they lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face; and (vii) they overpaid for the services that were received without adequate data security.

265.    As a direct and proximate result of Defendant's above-described violation of the CUTPA, Plaintiff and Class Members are entitled to recover actual damages, reasonable attorneys' fees, and costs.

**<u>COUNT VIII</u>**
**Declaratory and Injunctive Relief**
**28 U.S.C. §§ 2201, *et seq.***
**(On Behalf of Plaintiff and the Class)**

266.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

267.   Under the Declaratory Judgment Act, 28 U.S.C. s§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state laws and regulations described in this Complaint.

268.   An actual controversy has arisen in the wake of the Data Breach regarding Defendants' present and prospective common law and other duties to reasonably safeguard Plaintiff's and Class Members' Private Information, and whether Defendants are currently maintaining data security measures adequate to protect Plaintiff and Class Members from future data breaches that compromise their Private Information. Plaintiff and Class Members at imminent risk that further compromises of their Private Information will occur in the future.

269.   Defendants owe a duty of care to Plaintiff and Class Members, which required them to adequately secure Plaintiff's and Class Members' Private Information.

270.   Defendants still possess Private Information of Plaintiff and Class Members.

271.   To Plaintiff's knowledge, Defendants have made no announcement that they have changed their data storage or security practices relating to customers' Private Information.

272.   To Plaintiff's knowledge, Defendants have made no announcement or notification that they have remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

273.   There is no reason to believe that Defendants' employee training and security measures are any more adequate now than they were before the breach to meet Defendants' contractual obligations and legal duties.

274.   Plaintiff alleges that Defendants' data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of his Private

Information and the risk remains that further compromises of his Private Information will occur in the future.

275.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a.   Defendants owe a legal duty to secure their customers' Private Information and to timely notify customers of a data breach under the common law and Section 5 of the FTCA;

   b.   Defendants' existing security measures do not comply with their explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect customers' Private Information; and

   c.   Defendants continue to breach this legal duty by failing to employ reasonable measures to secure customers' Private Information.

276.    This Court should also issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with legal and industry standards to protect customers' Private Information. Specifically, this Court should issue an Order that, to comply with Defendants' explicit or implicit contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

   a.   engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

    b.   engaging third-party security auditors and internal personnel to run automated security monitoring;

    c.   auditing, testing, and training its security personnel regarding any new or modified procedures;

    d.   segmenting their user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems;

    e.   conducting regular database scanning and security checks;

    f.   routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

    g.   meaningfully educating their customers about the threats they face with regard to the security of their Private Information, as well as the steps Defendants' customers should take to protect themselves.

277.    If an injunction is not issued, Plaintiff will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach within Defendants' systems and networks. The risk of another such breach is real, immediate, and substantial.

278.    The hardship to Plaintiff if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Plaintiff will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendants' compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

279.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach within Defendants' networks and systems, thus preventing future injury to Plaintiff and other customers whose Private Information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a)  For an Order certifying this action as a Class action and appointing Plaintiff as Class Representative and his counsel as Class Counsel;

b)  For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c)  For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

d)  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

e)  Ordering Defendants to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

f)  For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g)  For an award of punitive damages under applicable law;

h)  For an award of attorneys' fees and costs under the CUTPA, the common fund doctrine, and any other applicable law;

i)  Costs and any other expense, including expert witness fees incurred by Plaintiff in connection with this action;

j)  Pre- and post-judgment interest on any amounts awarded; and,

k)  Such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 22, 2023

Respectfully Submitted,

*/s/ Ian W. Sloss*
Ian W. Sloss
Zachary A. Rynar
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, Floor 15
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Fax: (203) 325-3769
isloss@sgtlaw.com
zrynar@sgtlaw.com

Christopher D. Jennings*
Tyler B. Ewigleben*
Laura Edmondson*
**THE JOHNSON FIRM**
610 President Clinton Ave., Suite 300
Little Rock, AR 72201
Tel: (501) 372-1300
chris@yourattorney.com
tyler@yourattorney.com
ledmondson@yourattorney.com

Brian C. Gudmundson*
Jason P. Johnston*
Michael J. Laird*
Rachel K. Tack*

**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
brian.gudmundson@zimmreed.com
jason.johnston@zimmreed.com
michael.laird@zimmreed.com
rachel.tack@zimmreed.com


*To be admitted *pro hac vice*

*Counsel for Plaintiff and the Proposed Class*